UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LANCE BAKKI,<br><br>                    Plaintiff,<br><br>     v.<br><br>THE BOEING COMPANY,<br><br>                    Defendant. | CASE NO. C20-0235JLR<br><br>ORDER GRANTING DEFENDANT'S PARTIAL MOTION TO DISMISS |

# I.  INTRODUCTION

Before the court is Defendant the Boeing Company's ("Boeing") partial motion to dismiss Plaintiff Lance Bakki's complaint.  (MTD (Dkt. # 7); *see also* Compl. (Dkt. # 1-1).)  Mr. Bakki opposes the motion.  (Resp. (Dkt. # 10).)  The court has considered

//

//

//

//

ORDER - 1

the motion, Mr. Bakki's opposition to the motion, the relevant portions of the record, and the applicable law. Being fully advised,[1] the court GRANTS Boeing's motion.

## II. BACKGROUND

**A.    Mr. Bakki's Employment with Boeing**

This case arises out of a racially charged incident and Boeing's subsequent termination of Mr. Bakki. Mr. Bakki first worked for Boeing between 1997 and 1999 as a mechanic in Boeing's F22 program.[2] (Compl ¶ 3.1.) Boeing laid off Mr. Bakki in 1999 despite Mr. Bakki meeting or exceeding performance expectations. (*Id.*) Boeing hired Mr. Bakki again, this time as a First Line Manager in Boeing's Everett, Washington plant, on or about November 11, 2019. (*Id.* ¶ 3.2.) Between 2011 and 2014, Mr. Bakki consistently met or exceeded performance expectations at all annual performance reviews with his supervisor, Wendell Gabler. (*Id.* ¶ 3.3.) Prior to 2019, Mr. Bakki was not subject to Boeing's Corrective Action Memos ("CAMs") or any other disciplinary action regarding his work performance or behavior. (*Id.* ¶ 3.4.) After several position changes, Boeing promoted Mr. Bakki to oversee the Lean Manufacturing team for the 737 Wings Division. (*Id.* ¶¶ 3.5-3.9.)

//

//

---

[1] Neither party requests oral argument (*see* MTD at 1; Resp. at 1), and the court finds oral argument would be unhelpful to its disposition of the motion, *see* Local Rules W.D. Wash LCR 7(b)(4).

[2] For the purposes of a motion to dismiss the court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *See Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).

### B. Mr. Bakki's Interactions with Boyd Quaver

In December 2018, Mr. Bakki observed a plant floor worker, Boyd Quaver, committing numerous safety violations. (*Id.* ¶ 3.10.) Specifically, "Mr. Bakki observed [Mr. Quaver] sitting with headphones on, playing on his cell phone, and not wearing his safety glasses despite it being mandatory safety protocol to do so." (*Id.*) Mr. Bakki "did not know [Mr. Quaver's] identity" at the time, although he later came to know him as Mr. Quaver. (*Id.*) Mr. Bakki discussed Mr. Quaver's safety violations with him, a conversation witnessed by no other Boeing employees. (*Id.* ¶ 3.11.) After discussing the matter with Wade Davis, Mr. Bakki submitted a CAM for Mr. Quaver for his safety violations to the human resources department ("Human Resources"). (*Id.* ¶¶ 3.13-3.15.) Mr. Quaver's temporary lead supervisor, another supervisor, Kathy Davis, issued Mr. Quaver a CAM as a result of Mr. Bakki's submission to Human Resources. (*Id.* ¶ 3.15.)

Afterwards, Mr. Quaver filed a complaint with Boeing alleging that Mr. Bakki used the term "boy" in a racially discriminatory manner during the above-referenced conversation in which Mr. Bakki approached Mr. Quaver to discuss his safety violations. (*Id.* ¶ 3.16.) Mr. Bakki denies using the term "boy" in that conversation and alleges that he was not made aware of Mr. Quaver's complaint until approximately four months later. (*Id.*) Nevertheless, in April 2019, Mr. Coughlin,[3] Mr. Bakki's supervisor, gave Mr. Bakki a CAM based on allegations related to Mr. Bakki's conversations with Mr. Quaver and Mr. Davis regarding Mr. Quaver's safety violations. (*Id.* ¶¶ 3.18-3.19.) The CAM

---

[3] Mr. Bakki's complaint does not provide a first name for Mr. Coughlin. (*See generally* Compl.)

1  "alleged that Mr. Bakki called Mr. Quaver 'boy' with racially derogatory intentions given

2  that Mr. Quaver is African American and Mr. Bakki is Caucasian." (*Id.* ¶ 3.20.) Mr.

3  Bakki denied calling Mr. Quaver "boy" and explained that he had called Mr. Quaver by

4  his first name, "Boyd." (*Id.* ¶ 3.21.) Mr. Coughlin still issued a CAM to Mr. Bakki for

5  the incident. (*Id.*)

6  **C.   Mr. Bakki's Interactions with Steven Ramsey**

7  In May 2019, Boeing ethics investigator Carl Weaver called Mr. Bakki and

8  informed him that another Boeing employee, Steven Ramsey, accused Mr. Bakki of

9  retaliation for Mr. Bakki's role in reassigning Mr. Ramsey's project.[4] (*Id.* ¶ 3.24.)

10 Eventually Mr. Ramsey began work in his new position, but Mr. Bakki alleges that Mr.

11 Ramsey repeatedly failed to clock in to his new position. (*Id.* ¶ 3.28.) In July 2019, John

12 Lefferts and Rod Jones notified Mr. Bakki of Mr. Ramsey's "outburst towards both of

13 them which included, but was not limited to, threats of violence." (*Id.* ¶ 3.29.) Mr.

14 Bakki called security to report the incident "per company policy." (*Id.*) "Mr. Ramsey

15 was escorted off the company property pending an investigation for threats of violence."

16 (*Id.*)

17 **D.   Mr. Bakki's Termination**

18 Wings Director Mike Delaney called Mr. Bakki into a conference room on August

19 28, 2019. (*Id.* ¶ 3.30.) Mr. Delaney "terminated Mr. Bakki by reading a second CAM

20 which alleged retaliation against Mr. Ramsey." (*Id.* ¶ 3.31.) Mr. Delaney instructed Mr.

---

[4] The complaint alleges that Mr. Ramsey is a mechanic (Compl. ¶ 3.23) but does not specify the projects to which Mr. Ramsey was assigned or re-assigned (*see generally id.*).

Bakki to immediately turn over his security badges, and Mr. Bakki was escorted off Boeing's premises. (*Id.* ¶ 3.32.) Mr. Bakki appealed Boeing's decision but Boeing refused to overturn Mr. Bakki's termination. (*Id.*) Boeing subsequently denied Mr. Bakki a vendor badge, a requirement to work with one of Boeing's vendors. (*Id.* ¶ 3.33)

Following his termination, Mr. Bakki has been unable to secure new employment, has experienced financial strain, and "has suffered emotional damages including but not limited to depression." (*Id.* ¶ 3.35.)

### III.   ANALYSIS

Mr. Bakki brings four claims against Boeing: (1) violation of Washington's Law Against Discrimination ("WLAD"), RCW 49.60.030, RCW 40.60.180; (2) violations of RCW 49.60.210-20; (3) wrongful termination; and (4) intentional infliction of emotional distress ("IIED").[5] (Compl. ¶¶ 4.1-4.31.) Boeing's partial motion to dismiss seeks dismissal only of Mr. Bakki's IIED claim. (*See* MTD at 5-7; *see also* Compl. ¶¶ 4.28-4.31.) The court first sets forth the applicable legal standards before analyzing Boeing's motion.

**A.   Legal Standards**

   1.  Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the court construes the complaint in

---

[5] IIED is also referred to as the tort of outrage. *See, e.g.*, *Dicomes v. State*, 782 P.2d 1002, 1012 (Wash. 1989).

the light most favorable to the nonmoving party.  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).  The court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff.  *Wyler Summit P'ship*, 135 F.3d at 661.  The court, however, is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 677-78.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'. . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

    2.  <u>IIED</u>

    The burden of proof on an IIED claim is stringent. *See Lyons v. U.S. Bank Nat'l Ass'n*, 336 P.3d 1142, 1151 (Wash. 2014).  To prevail on an IIED claim, "a plaintiff must prove (1) outrageous and extreme conduct by the defendant, (2) the defendant's intentional or reckless disregard of the probability of causing emotional distress, and (3)

//

1 actual result to the plaintiff of severe emotional distress." *Steinbock v. Ferry Cty. Pub. Util. Dist. No. 1*, 269 P.3d 275, 282 (Wash. Ct. App. 2011).

"The first element requires proof that the conduct was 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Lyons*, 336 P.3d at 1151 (quoting *Robel v. Roundup Corp.*, 59 P.3d 611, 619 (Wash. 2002)); *see also Dicomes*, 782 P.2d at 1012. "[M]ere insults and indignities, such as causing embarrassment or humiliation, will not support imposition of liability on a claim of outrage." *Dicomes*, 782 P.2d at 1013.

"The question of whether certain conduct is sufficiently outrageous is ordinarily for the jury, but it is initially for the court to determine if reasonable minds could differ on whether the conduct was sufficiently extreme to result in lability." *Lyons*, 336 P.3d at 1151 (quoting *Dicomes*, 782 P.2d at 1013). Similarly, "[i]t is for the court to determine whether on the evidence severe emotional distress can be found; it is for the jury to determine whether, on the evidence, it has in fact existed." *Id.* (quoting Restatement (Second) of Torts § 46 (Am. Law Inst. 1965)). The fact that an employer discharged an employee by itself is insufficient to support an IIED claim. *See Dicomes*, 782 P.2d at 1013 (holding that privately delivering a termination letter and briefly responding to media inquiries regarding the termination "cannot be considered atrocious and intolerable in a civil society").

//

//

**B.     Boeing's Motion**

Boeing provides three primary grounds to dismiss Mr. Bakki's IIED claim: (1) that Mr. Bakki fails to allege conduct on behalf of Boeing that was extreme or outrageous (*see* MTD at 5-6); (2) that Mr. Bakki fails to plead that he suffered severe emotional distress (*see id.* at 6-7); and (3) that Mr. Bakki's IIED claim is duplicative of Mr. Bakki's discrimination claim, and therefore must be dismissed (*see id.* at 7). The court concludes that dismissal is warranted on Boeing's first and third grounds[6] and therefore GRANTS Boeing's motion to dismiss Mr. Bakki's IIED claim.

        1.     Extreme and Outrageous Conduct

The court agrees with Boeing that Mr. Bakki does not allege conduct that is extreme and outrageous. Mr. Bakki's allegations regarding Boeing's discipline with respect to Mr. Bakki's interactions with Mr. Boyd, even taken as true, do not meet that standard. At best, Mr. Bakki's allegations describe unfair or unwarranted workplace discipline. (*See* Compl. ¶¶ 3.18-3.21 (alleging that Mr. Coughlin gave Mr. Bakki a CAM based on Mr. Boyd's allegation that Mr. Bakki called Mr. Boyd "boy," despite Mr. Bakki's denial that he used that word).) This kind of workplace discipline allegation is insufficient to meet the first element of Mr. Bakki's IIED claim. *See Kirby v. City of Tacoma*, 98 P.3d 827, 837 (Wash. Ct. App. 2004) ("Workplace disciplinary actions such as . . . internal affairs investigations," without more, do not constitute extreme and

//

---

[6] Because the court concludes that dismissal of Mr. Bakki's IIED claim is warranted on two separate and independent grounds, the court declines to consider whether Mr. Bakki alleges severe emotional distress sufficient to meet that element of his IIED claim.

outrageous conduct); *Lawson v. Boeing Co.*, 792 P.2d 545, 550-51 (Wash. Ct. App. 1990) (holding that allegations of sexual harassment, even if knowingly false, did not constitute outrageous and extreme conduct sufficient to sustain an IIED claim).

Similarly, Mr. Bakki fails to allege extreme and outrageous conduct regarding his interactions with Mr. Ramsey or Mr. Bakki's termination.[7] Mr. Bakki alleges little more than that he was accused of retaliating against Mr. Ramsey, was brought into a conference room, and was terminated. (*See* Compl. ¶¶ 3.24-3.35.) However, like in *Dicomes*, the allegation that Boeing terminated Mr. Bakki does not describe extreme and outrageous conduct. *Dicomes*, 782 P.2d at 1013. Moreover, even if Mr. Bakki's allegations could be described as humiliating or insulting to Mr. Bakki, "mere insults and indignities, such as causing embarrassment or humiliation, will not support imposition of liability on a claim of outrage." *See id.*

Mr. Bakki's attempt to distinguish his allegations from those in *Dicomes* and its progeny is unavailing. Mr. Bakki contends that unlike in *Dicomes*, the allegations against Mr. Bakki here gravely reflected on Mr. Bakki's "professionalism, character, morals, and values, casting him in a racist and bigoted light." (*See* MTD Resp. at 8.) However, Mr. Bakki's complaint does not describe any specific allegations made against him by Boeing

//

---

[7] In addition to his factual allegations, Mr. Bakki's complaint makes several conclusory legal allegations that Boeing's conduct was "extreme and outrageous," that Boeing's conduct was done "recklessly with the intent to inflict extreme emotional distress," and that "[a]s a result of [Boeing's] extreme and outrageous conduct, [Mr. Bakki] has suffered extreme emotional distress." (*See* Compl. ¶¶ 4.29-4.30.) These allegations are merely "a formulaic recitation of the elements" of an IIED claim. *See Iqbal*, 556 U.S. at 678. Therefore, the court disregards these allegations. *See id.*

1 or its representatives; only that Boeing employees accused Mr. Bakki of using racially
2 charged language and retaliation and that Boeing terminated him on that basis. *See supra*
3 § II.B-D. Second, even if Mr. Bakki had alleged that Boeing or its representatives made
4 such allegations, Mr. Bakki fails to explain how they would rise above "mere insults and
5 indignities, such as causing embarrassment or humiliation," that do not support an IIED
6 claim. *See Dicomes*, 782 P.2d at 1013.

7 In sum, Mr. Bakki's complaint contains no allegations sufficient to support an
8 inference that Mr. Bakki can meet the first element of his IIED claim. Because extreme
9 and outrageous conduct is a necessary element of an IIED claim, and Mr. Bakki fails to
10 allege facts that could constitute extreme and outrageous conduct, Mr. Bakki fails to state
11 an IIED claim. Accordingly, the court DISMISSES his IIED claim.

12     2. <u>Duplicativeness</u>

13 Boeing cites state and federal case authority for the proposition that Mr. Bakki's
14 IIED claim must be dismissed because it is duplicative of Mr. Bakki's
15 discrimination-based claims. (*See* MTD at 7 (citing *Ellorin v. Applied Finishing, Inc.*,
16 996 F. Supp. 2d 1070, 1093 (W.D. Wash. 2014); *Caldwell v. Boeing Co.*, No.
17 C17-1741JLR, 2018 WL 2113980, at *10 (W.D. Wash. May 8, 2018); *Francom v.
18 Costco Wholesale Corp.*, 991 P.2d 1182, 1192 (Wash. Ct. App. 2000)).) Mr. Bakki's
19 response to Boeing's motion does not address this argument. (*See generally* Resp.)

20 The court agrees with Boeing. Washington courts have held that common law tort
21 claims, such as IIED and negligent infliction of emotional distress ("NIED"), that are
22 based on the same facts underpinning a plaintiff's claim for unlawful discrimination, are

duplicative of the discrimination claim and therefore must be dismissed. *See Francom*, 991 P.2d at 1192-93 (holding that the trial court properly dismissed the plaintiffs' NIED claim because it relied on the same facts supporting the plaintiffs' discrimination claim); *Haubry v. Snow*, 31 P.3d 1186, 1193 (Wash. Ct. App. 2001) (holding that an employee may recover damages for emotional distress in an employment context but only if the factual basis for the claim is distinct from the factual basis for the discrimination claim); *see also Anaya v. Graham*, 950 P.2d 16, 20 (Wash. Ct. App. 1998) (affirming the trial court's dismissal of the plaintiff's IIED claim because it "duplicates the discrimination claim"). Such claims can "only arise[ ] when the claim is based on a separate factual basis from the sexual discrimination claim." *Haubry,* 31 P.3d at 1193.

Even if Mr. Bakki had responded to Boeing's argument on duplicativeness, there can be no dispute that the factual allegations that form the basis of Mr. Bakki's discrimination claims are the same factual allegations that underpin his IIED claim. (*Compare* Compl. ¶¶ 4.29-4.31 (alleging in Mr. Bakki's IIED claim that Boeing's "false allegations of racial discrimination and retaliation" constitute "extreme and outrageous conduct") *with id.* ¶¶ 4.5 (alleging in Mr. Bakki's WLAD claim that he was disciplined "on false and racially discriminatory allegations").) Accordingly, Mr. Bakki's IIED claim is duplicative of his discrimination claims, and the court DISMISSES his IIED claim on this basis as well.

## IV. CONCLUSION

For the foregoing reasons, the court (1) GRANTS Boeing's partial motion to dismiss (Dkt. # 7); (2) DISMISSES Mr. Bakki's IIED claim (Compl. ¶¶ 4.28-4.31); and

(3) GRANTS Mr. Bakki leave to file an amended complaint within 14 days of the date of this order that cures the deficiencies identified herein.

Dated this 28th day of May, 2020.

JAMES L. ROBART
United States District Judge